## APPEAL OF KONRAD SCHREIER CO.

Docket No. 3600. Promulgated November 29, 1927.

*Chester A. Gwinn, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the Commissioner.

408

OPINION.

TRUSSELL: In *Appeal of Manhattan Brewing Co.*, 6 B. T. A. 952, the Board held that those tangible properties of a brewing company, which lost much of their value by reason of national prohibition legislation, were properly subject to a claim for the obsolescence under section 234 (a) (7) of the Revenue Act of 1918 and that part of the amount of such obsolescence is an allowable deduction from gross income for the calendar year 1918. In the instant case the petitioner's business of producing barley malt used in the manufacturing of malt liquor was subject to the same or similar conditions as were the properties used directly in the production of malt liquor. In the instant case the petitioner was compelled to discontinue both its malt liquor brewing business and its business of producing barley malt and we

are, therefore, of the opinion that the interpretation of the obsolescence provisions of the Revenue Act of 1918 applies to the property of a malting plant under the circumstances of this case in the same proportion that it applies to a property used directly in the brewing business.

In the case at bar the credible and uncontradicted testimony establishes as proven facts that the petitioner's malt house and machinery were completely thrown into disuse when the petitioner ceased to operate its malting plant in the year 1920. From the beginning of the year 1918 the petitioner had foreseen the ultimate destruction of its malting business and had from that time until 1920 gradually reduced the use of such plant until its operation was finally abandoned. The testimony further establishes that the malt house was designed and built peculiarly for use as a malt plant; that the machinery and equipment installed therein were imbedded in the building and can not be removed without completely wrecking the building. The testimony further proves that the machinery specially designed for the production of malt could not have been then used or at any time since used for any other purpose, and that even though it might have been removed from the building it would have no market value and that the cost of removal would exceed any possible salvage value of machinery as well as the building itself. We are, therefore, of the opinion that the amount of the depreciated cost of the malt house and its machinery on the date that its use was discontinued in 1920 was a total loss and that this petitioner is entitled to claim as a deduction from gross income the amount of such loss distributed equally over the period from January 31, 1918, to October 31, 1920, and prorated into the taxable years 1918, 1919, and 1920.

Respecting the malt plant elevator, the testimony establishes the fact that the use of this elevator was completely discontinued in October, 1920, and that from that time until the time of the trial of this action it had remained wholly unused and that during that period the petitioner had been able to find no probable or possible future use for this property; that its construction was designed peculiarly for use as a grain elevator; that there was no use for such an elevator in the community in which the petitioner's property was located; that it was situated in a territory devoted chiefly to dairying, where little grain was produced; and that it was not in a location where it could be used as a terminal elevator. The testimony is convincing that at the time when its use was discarded there was no possible future use in sight and its design and construction were of such a character as to make it substantially impossible to remodel it for other uses. This elevator, however, was constructed of brick and concrete in the year 1913, and in the ordinary course

of business should have had many years of life before it could have become useless from the result of ordinary exhaustion, wear and tear, and, although the testimony in the record, respecting this elevator, is of the same character as the testimony regarding the malt house, we still lean to the opinion that this elevator property should not be treated as a complete and total loss. And, although the record furnishes us with no testimony and no guide which could lead us to the determination of its salvage or possible future usage, the record does furnish a complete description of the elevator building and a detailed inventory of the machinery and equipment installed therein. From an examination of the descriptions of these properties, we are convinced that while it may be true that at the time the use of this property was discontinued there may have been no ready market for such property, we are not convinced that it was then a total loss. Other people in other places were carrying on a grain-elevator business and it seems entirely possible that this elevator machinery could then have been and at any time since might be, removed from the elevator building and sold to other people having use for such machinery. The building itself might at some future time prior to its disintegration on account of exhaustion come into use and that therefore it may not be said to have been a total loss. Taking this view of the situation, we are led to the conclusion that instead of allowing a total loss on the elevator and machinery, as claimed by the petitioner, we may properly determine a different measure of such loss and for the purpose of this case we are of the opinion that the allowable obsolescence on the elevator and machinery is for the period here under consideration 60 per cent of its depreciated cost as of October, 1920.

Respecting the claimed loss upon brewery buildings and equipment, it appears that the same situation exists as above outlined regarding the malting plant elevator and its equipment and following the reasoning there set forth, we fix the obsolescence loss on such equipment at 60 per cent of the depreciated cost.

The obsolescence here allowed on brewery property may be spread over the period from January 31, 1918, to January 16, 1920, and the obsolescence loss upon malt plant properties may be spread over the period from January 1, 1918, to October 31, 1920.

> *The deficiency may be recomputed in accordance with the foregoing findings of fact and opinion upon 15 days' notice, pursuant to Rule 50. Judgment will be entered accordingly.*

Considered by LITTLETON, SMITH, and LOVE.